Submitted on record and briefs July 24, reversed with instructions
to reinstate the referee's order December 7, 1981

In the Matter of the Compensation of
Kenneth Ivie, Claimant.

IVIE,

*Petitioner,*

*v.*

STATE ACCIDENT INSURANCE FUND
CORPORATION,

*Respondent.*

(No. 80-04388, CA A20724)

637 P2d 192

Michael Strooband, and Bischoff, Murray & Strooband,
P.C., Eugene, filed the brief for petitioner.

Darrell E. Bewley, Appellate Counsel, State Accident
Insurance Fund Corporation, Salem, filed the brief for
respondent.

Before Richardson, Presiding Judge, and Thornton and
Van Hoomissen, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

In this workers' compensation case SAIF denied claimant's claim. The referee ordered SAIF to accept the claim, finding that claimant's degenerative joint disease had worsened as a result of his work activity. The Workers' Compensation Board reversed the referee's order. Claimant appeals from the Board's order reinstating SAIF's denial of the claim. We reverse.

The issue in this proceeding is compensability: whether claimant has shown that his work activity has caused a worsening of the underlying disease and not merely an increase in symptoms. In *Weller v. Union Carbide,* 288 Or 27, 602 P2d 259 (1979), the court held that, in order for pain from a preexisting disease to be compensable, the claimant

"* * * would have to prove by a preponderance of evidence that (1) his work activity and conditions (2) caused a worsening of his underlying disease (3) resulting in an increase in his pain (4) to the extent that it produces disability or requires medical services. * * *" 288 Or at 35.

The second element is at issue here.

The record shows that claimant, age 51 at the time of the hearing, had worked as a spreaderman for the employer for eighteen and one-half years. His work entailed repetitive arm and shoulder motions in feeding pieces of veneer into the spreader, one step in the manufacture of plywood. About one and one-half to two years before the hearing, claimant began to have trouble with his right shoulder. He had noticed pain and discomfort for the last five to six years. In August, 1979, he sought medical attention from Dr. O'Toole, whom he had seen for a variety of other ailments during 1979. Dr. O'Toole's chart notes for that visit state:

"August 23, 1979 - Has both right epicondylitis and AC [acromioclavicular] joint degenerative arthritis and pain, presumably one came first and then the other was exacerbated by alteration and physical motion in accomplishing customary tasks on the green chain. * * *"

Claimant sought medical attention from a second physician, Dr. Weinman, in early 1980. Dr. Weinman's written report of his examination of claimant on March 13, 1980, states:

"Impression: Degenerative joint disease and possible internal derangement of right acromioclavicular joint.

"Recommendations: He's a candidate for a Mumpford operation to excise the distal clavicle. He'll think it over and let us know."

Because he lacked funds, claimant postponed the operation in order to investigate whether his employer, through SAIF, would cover the expenses. In this regard, Dr. Weinman wrote to SAIF on March 31, 1980: "I do think that repetitive activity of the kind that he describes to me probably has contributed to his problem." SAIF consulted Dr. Harwood, who concluded on the basis of Dr. Weinman's report:

"* * * [I]n my professional opinion, the current right shoulder problem is not the result of his work activity as far as etiological factor is concerned. * * * So, I feel that this is a pre-existing degenerative joint disease of the shoulder, which has been aggravated by the above work activities, not caused by it."

Claimant underwent the recommended surgery and pursued his administrative remedies. In preparing for the hearing before the referee, SAIF again solicited Dr. Weinman's medical opinion. In his letter of June 27, 1980, he stated: "It is my opinion that this patient's job aggravated the disease process, necessitating his Mumpford excision of the distal clavicle on May 22, 1980."

SAIF also consulted Dr. Brooke, who reviewed claimant's medical file. In his letter of September 2, 1980, Dr. Brooke concluded: "This [treatment] was however, to correct a preexisting condition rather than the transcient [sic] aggravation of symptoms provoked by his employment. In this regard, please note that I am in complete agreement with the assessment of Dr. Harwood." SAIF asked Dr. Weinman to respond to Dr. Brooke's conclusion. Dr. Weinman wrote, on September 17, 1980, that the purpose of the operation was to relieve claimant's pain. His report continued:

"* * * If I am to report the attitude and the history as obtained from the patient, I must feel that:

"1) He had pre-existing acromioclavicular joint disease.

"2) It was made symptomatic by his job."

Based on the record developed at the hearing, the referee stated in his opinion and order:

"Applying the test of preponderence of evidence; that being whether the facts asserted are more probably true than false, I conclude the claimant has established compensability under the criteria set forth in *Weller v. Union Carbide,* * * * . I specifically find that the claimant's work over eighteen and a half years required repetitive use of his arms and shoulders which tended to aggravate, make worse, the underlying joint disease as described by his attending physicians. This work activity did more than merely produce symptoms, it made the underlying condition, (disease), worse. (Ex. 17). This worsening resulted in an increase in claimant's pain (symptoms) requiring the surgery performed and described. The claimant has met his burden of proof."

We agree with the referee's conclusion. Claimant's attending physicians both stated that claimant has degenerative joint disease that was "exacerbated" (Dr. O'Toole) or "aggravated" (Dr. Weinman) by his work activities. Dr. Harwood agreed with Dr. Weinman, but emphasized that claimant's work activities did not *cause* the disease but only *aggravated* a preexisting disease. This distinction is immaterial to this workers' compensation claim, however, if the *Weller* criteria are satisfied.

Dr. Brooke agreed generally with Drs. O'Toole, Weinman, and Harwood, but noted that the surgery was to treat the preexisting disease, not the work-caused aggravation of symptoms. In his September 17, 1980, letter Dr. Weinman appeared to agree with Dr. Brooke by saying that claimant's preexisting disease was made symptomatic by his job. We do not so interpret Dr. Weinman's last statement, however. It is also consistent with the view that the preexisting disease *worsened* and became symptomatic. This is the view that Dr. Weinman's earlier statements reflect, as do Dr. O'Toole's and Dr. Harwood's statements. Although Dr. Brooke disagreed, we find the weight of the medical opinion evidence favors claimant.

*Autwell v. Tri-Met,* 48 Or App 99, 615 P2d 1201, *rev den* 290 Or 211 (1980), and *Slechta v. SAIF,* 43 Or App 443, 603 P2d 366 (1979), *rev den* 288 Or 519 (1980), are distinguishable. In *Autwell,* the claimant's job as a bus driver

caused him serious pain. The medical opinions agreed that the claimant's life-long knee problems had not worsened; they had only became symptomatic. Under *Weller,* the claimant failed to prove that his underlying disease had worsened. In *Slechta,* the claimant suffered from degenerative arthritis in his lower back, affecting his work as a maintenance carpenter. His physician initially stated that the disease was preexisting and that claimant's work aggravated his problem. On cross-examination by SAIF, the physician explained that the claimant's work would cause the disease to become increasingly symptomatic, but that claimant's work was not the cause of continuing degeneration of his spine. Thus, under *Weller,* the claimant failed to prove that his underlying disease had worsened due to his work activity. In contrast, claimant here showed that his work activity did cause a worsening of his preexisting acromioclavicular joint disease. Claimant has met his burden of proof.

Reversed with instructions to reinstate the referee's order.